# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ALEXIS BILLINGSLEA,**

    **Plaintiff,**

    v.                                              Case No. 22-CV-534

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Alexis Billingslea seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. For the reasons explained below, the Commissioner's decision is reversed, and the case is remanded for further proceedings.

## BACKGROUND

On February 13, 2020, Billingslea filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on November 1, 2016 due to back injury, knee injury, arthritis, depression/anxiety, and diabetes. (Tr. 13, 178.) Billingslea's claim was denied initially on September 29, 2020, and upon reconsideration on June 4, 2021. (Tr. 13.) Billingslea had a telephone hearing on November 3, 2021 before Administrative Law Judge ("ALJ") Brent C Bedwell. (*Id.*) Billingslea testified at the hearing, as did Spencer Mosley, a vocational expert ("VE"). (*Id.*) At that hearing, Billingslea amended her alleged onset date of disability to August 23, 2018. (*Id.*)

The ALJ issued an unfavorable written decision on November 30, 2021. (*Id.* at 9.) The ALJ found that Billingslea had the following severe impairments: obesity; bilateral leg lymphedema, status-post right knee surgery; osteoarthritis; lumbar disc protrusion; and right ankle degenerative changes. (*Id.* at 15.) The ALJ also found that Billingslea did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (*Id.* at 17.) Further, the ALJ found that Billingslea had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, ropes and scaffolds; cannot operate foot controls; and can do occasional stooping, crouching, kneeling, crawling and climbing ramps and stairs." (*Id.* at 19.) Although the ALJ found that Billingslea was unable to perform any of her past relevant work (*id.* at 23), he found that considering her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Billingslea could perform (*id.* at 24). As such, the ALJ found that Billingslea was not disabled from August 23, 2018 through the date of the decision. (*Id.* at 25.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Billingslea's request for review on March 21, 2022. (*Id.* at 1.)

## DISCUSSION

1.   *Applicable Legal Standards*

The court may only reverse the Commissioner's final decision if it is based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence need not be conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted).

While the ALJ is not required to discuss every piece of evidence in a decision, the ALJ must "build an accurate and logical bridge" between the evidence and their conclusions. *Jelinek*, 662 F.3d at 811; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ must also follow the SSA's rulings and regulations, as failure to do so requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).

In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is strictly limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to this Case

Billingslea advances three arguments: (1) the ALJ failed to adequately account for the limitations caused by Billingslea's severe impairment of bilateral leg lymphedema in his RFC determination; (2) the ALJ improperly weighed the opinion of Billingslea's treating nurse practitioner Susan L. Hafemann; and (3) the ALJ's determination that Billingslea's statements are inconsistent with the record is not supported by substantial evidence. (Pl.'s Br., Docket # 11.) I will address each argument in turn.

#### 2.1 Lymphedema Limitation in the RFC Determination

Billingslea asserts that the ALJ did not adequately account for her leg lymphedema[1] because the ALJ limited Billingslea to sedentary work[2] despite evidence in the hearing testimony and throughout the record that sitting exacerbates Billingslea's leg swelling. (Pl.'s Br. 11.) Billingslea further asserts that the ALJ committed a material error by omitting leg elevation as a limitation in the RFC determination. (*Id.* at 11–12.)

### 2.1.1 RFC Determination

RFC is the most an individual can do in a work setting "despite his or her limitations," based upon objective medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." Social Security Ruling ("SSR") 96–8p; *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, "even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817–18 (7th Cir. 2014) (quoting *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). However, a determination "need not contain a complete written evaluation of every piece of evidence." *Id.* (quoting *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)).

---

[1] Lymphedema refers to tissue swelling caused by an accumulation of protein-rich fluid that's usually drained through the body's lymphatic system. . . . Lymphedema signs and symptoms include:
- Swelling of part or all of the arm or leg, including fingers or toes
- A feeling of heaviness or tightness
- Restricted range of motion
- Recurring infections
- Hardening and thickening of the skin (fibrosis)

Mayo Clinic Staff, *Lymphedema*, Mayo Clinic (Nov. 24, 2022), https://www.mayoclinic.org/diseases-conditions/lymphedema/symptoms-causes/syc-20374682 (last visited Mar. 27, 2023).

[2] According to the SSA:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567 (2022). At the sedentary level of exertion, occasionally means "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10.

In his decision, the ALJ found that limiting Billingslea to sedentary exertion, with additional postural limitations, would account for her bilateral lower extremity edema. (Tr. 22.) The ALJ did not include leg elevation as a postural limitation, stating that although Billingslea testified that she must "elevate her legs at times" due to lower extremity pain (Tr. 19), "there are a few references [to leg elevation] in the medical records" (*id.* at 22) and there is "no support for the degree of leg elevation asserted by the claimant" (*id.*).

The ALJ began the RFC determination by recounting Billingslea's testimony in which she stated that she has increasing pain in her back and lower extremities, including her knees and ankles, which limit her ability to walk, sit, stand, or lay for a long period of time. (*Id.*) Billingslea also testified that due to her lower extremity pain, she must elevate her legs at times. (*Id.*) Finally, she testified that her body pain is exacerbated by her obesity, but she has been able to alleviate some of the pain in her knees by losing ninety-five pounds. (*Id.*)

The ALJ then cited to several reports showing that the claimant experiences chronic back pain and stiffness as well as right leg, knee, and ankle pain and weakness. (*Id.* at 20.) The first report from October 9, 2019 documents Billingslea's issues with upper and lower back pain, leg pain and weakness, restricted range of motion in the spinal region, as well as worsening pain with bending, lifting, twisting, and walking. (*Id.*) The second report from June 4, 2020 shows that Billingslea presented with lower back pain that worsened with bending, twisting, walking, coughing, and sneezing. (*Id.*) The third report from June 10, 2020 revealed a treatment diagnosis of lower extremity lymphedema with increased pain, increased heaviness, increased girth, and tissue abnormalities. (*Id.*)

The ALJ noted, however, that subsequent clinical reports suggested significant improvements in Billingslea's lower extremity heaviness and decreased swelling and tissue softening. (*Id.*) Notably, an evaluation report from August 17, 2020 indicates that Billingslea

5

had made progress in reports of pain, tissue softening, and in functional improvements since the start of her care, and she even reported pain after her treatment as being a 0, on a 0–10-point scale. (*Id.*) The provider indicated that exacerbation in Billingslea's edema was likely due to several factors, including Billingslea's lapse in care and inconsistency in home exercises. (*Id.*)

A subsequent treatment report from August 16, 2021 shows Billingslea was treated for pain and discomfort in the left lower extremity, extending to the ankle. (*Id.* at 21.) This report also indicated that Billingslea reported increased swelling in the left lower extremity while on a vacation in the Dominican Republic but that the swelling improved when she returned. (*Id.*)

The ALJ also noted that Billingslea is classified as obese by these medical reports. (*Id.*) Although Billingslea's obesity is not attributed to any specific limitation, the ALJ found that it can reasonably be expected to cause additional pain and pressure on the lower extremities, thus compromising her exertional capacity and causing further limitation in her ability to perform postural movements. (*Id.*) Further, the ALJ noted that this finding further supported a limitation to sedentary exertion with limitation in Billingslea's ability to consistently perform postural movements using her lower extremities. (*Id.*)

Finally, the ALJ considers two assessments by Susan L. Hafemann, NP, with Aurora Health Care, from October 2020 and April 2021, generally finding that "[d]espite some lack of specificity with regard to the claimant's functional abilities, Provider Hafemann, overall, finds the claimant's medical condition causes limitations generally consistent with a range of sedentary exertion." (*Id.*) In the October 2020 report, "Provider Hafemann opines the claimant is unable to sit or stand more than 2 consecutive hours without increase pain and decreased mobility; and she is unable to lift over 10 pounds." (*Id.*) However, the ALJ finds

Hafemann's opinion lacks specifics regarding Billingslea's physical functioning beyond that statement. (*Id.*)

In the April 2021 report, Nurse Hafemann opines that: (1) Billingslea is able to sit and stand no more than one hour at a time and that she must walk around/stand for twenty minutes before returning to sitting; (2) Billingslea would require unscheduled breaks during the workday due to pain; and (3) Billingslea needs to elevate her legs at least two hours during an eight-hour workday due to edema and pain. (*Id.*) The ALJ noted that while Nurse Hafemann provides more specifics in this assessment, the limitations opined in the report still place Billingslea within a range of sedentary exertion and that there is little support in the record for elevating the legs to the extent opined by Nurse Hafemann. (*Id.* at 21–22.)

Ultimately, the ALJ found that the record supports limiting Billingslea to "sedentary exertion, with additional postural limitations to account for chronic back and lower extremity pain with decreased range of motion in the spinal region, bilateral lower extremity edema, slow with change in positions, and decreased strength in the lower extremities." (*Id.* at 22.) The ALJ also found that "[a] limitation to sedentary exertion is further supported based on a reasonable expectation that the claimant's body habitus would cause restrictions in her movement further compromising her mobility." (*Id.*) Moreover, the ALJ found that Billingslea's testimony that she can sit for two hours and then needs to move around a bit for about fifteen minutes, that walking and moving about is better for her than continual sitting, and that she can walk around the block and stand to do a task for about thirty minutes is consistent with sedentary work. (*Id.*)

### 2.1.2 Consideration of Billingslea's Lymphedema

Billingslea argues that the ALJ erred in limiting her to sedentary work and by omitting leg elevation as a limitation in the RFC determination. (Pl.'s Br. 11–12.) More specifically,

7

Billingslea argues that the ALJ erred in citing evidence of improvement of Billingslea's lymphedema because the ALJ mischaracterized the record by suggesting that Billingslea's leg lymphedema consistently improved after June 2020. (*Id.* at 12.) Additionally, Billingslea argues that because she is alleging an onset of her disability in August 2018, any alleged improvement after June 2020 does not support a finding of non-disability prior to June 2020.

In limiting Billingslea to sedentary exertion with postural limitations that do not include leg elevation, the ALJ particularly "considered the limitations set forth by Dr. [*sic*] Hafemann, who, based on her assessment of the claimant's impairment related limitations, found the claimant would be limited to a range of sedentary exertion" (Tr. 22), as well as Billingslea's body mass index (*id.* at 21) and her functional report in which "[s]he stated walking and moving about is better for her than continual sitting and she can walk around the block and stand to do a task for about 30 minutes" (*id.* at 22). The ALJ also considered Billingslea's demonstrated improvement in pain, heaviness, swelling, and tissue softening as a result of her occupational therapy sessions in the summer of 2020. (*Id.* at 20.)

At first glance, the ALJ's assessment is supported by record evidence. Particularly, the ALJ's discussion of Billingslea's improvements during occupational therapy in 2020. (Tr. 638–39 (reported pain level of 0 out of 10, decrease in reported heaviness in both right and leg legs, "decreased swelling and tissue softening"); Tr. 641 (same); Tr. 645–46 (reported pain level of 0 out of 10; slight increase in heaviness following vacation; "decreased swelling and tissue softening"); Tr. 648 (no reported change in pain or heaviness; "decreased swelling and tissue softening"); Tr. 651–53 ("[Patient] making progress in decreased reports of pain, tissue softening and in functional improvements since start of care. Exacerbation in edema measurements may be due to several factors including lapse in care and inconsistent HEP performance. [Patient] verbalizes awareness of need for increased attendance and

8

consistency.").) However, his evidence does not paint a complete picture of Billingslea's lymphedema.

The record indicates that Billingslea demonstrated worse swelling at multiple points during 2020. (Tr. 688 (Nurse Hafemann noted "3+ left, 2+ right generalized bilateral lower extremity edema" during an appointment with Billingslea on June 15, 2020); Tr. 650 (noted increases of 15.4 cm for Billingslea's right leg and 21.9 cm for Billingslea's left leg since her May 2020 evaluation at an occupational therapy appointment on August 17, 2020); Tr. 763 (Nurse Hafemann noted "3+ left lower extremity with lymphedema, 2 to 3+ right lower extremity edema" during an appointment on October 6, 2020); Tr. 855 (Nurse Hafemann noted "3+ left lower extremity with lymphedema, 2 to 3+ right lower extremity edema" during an appointment on December 17, 2020)). In July 2020, Billingslea stated that she could only complete two to three hours of sitting, forty minutes of standing, or twenty minutes of walking without a break, that she could only lift about ten pounds, and that she typically elevates her legs and ices her back to deal with swelling each day. (Tr. 205–13.)

Despite improvements following her gastric sleeve surgery in April 2021, Billingslea's lymphedema worsened again in May 2021 when she was referred back to the lymphedema clinic for treatment. (Tr. 1302.) Billingslea then demonstrated some reduced swelling and hardness in her left leg from June to September 2021, which she attributes to both treatment at the lymphedema clinic (Tr. 1198–1321) and daily leg elevation (Tr. 236–73). During the hearing in November 2021, Billingslea testified that sitting exacerbates her swelling and that she would need to walk around for about ten to fifteen minutes for every two-hour period of sitting, that she struggles to lift five pounds, and that she elevates her legs above her heart for a couple of hours two to three times a day. (Tr. 44–46).

I find that the ALJ's focus on Billingslea's limited improvement constitutes improper cherry-picking. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although the ALJ cites to some evidence contradicting the assertion of improvement, such as Billingslea's testimony regarding her need for daily leg elevation (Tr. 19) and the function report from Billingslea's mother (Tr. 23), the ALJ provides no record evidence to support his finding that this evidence is inconsistent with Billingslea's record overall. Furthermore, the ALJ provides no record evidence of improvement in Billingslea's lymphedema from the date of her alleged onset, August 23, 2018, up to the 2020 period of improvement, which does not support the ALJ's ultimate finding of non-disability for the entire period alleged.

As to the inclusion of a leg elevation limitation, Billingslea asserts that the ALJ cites no evidence to support his decision to discount the necessary degree of leg elevation supported by the record (Pl.'s Br. at 14–15.) Billingslea further asserts that "the ALJ's purported lack of support for leg elevation 2-3 times per day for a couple hours at a time does not lead logically to his conclusion not to include *any* leg elevation at all in his RFC assessment." (*Id.* at 15.)

Although the ALJ notes evidence from providers, Billingslea's mother, and Billingslea herself that support Billingslea's asserted degree of leg elevation (Tr. 19–23), the ALJ contradictorily finds that there is "no support for the degree of elevation asserted by the claimant" (*id.* at 22). The ALJ then states that although "[t]here are a few references in the medical records," none of these records support a need for leg elevation "to the extent the claimant asserted being a couple of hours 2-3 times per day." (*Id.*) At no point does the ALJ identify what support he deems lacking or provide record evidence to support his decision to

10

exclude a leg elevation limitation altogether. As such, the ALJ erred because he did not provide a logical bridge between the record evidence and his decision to not consider any degree of leg elevation in the RFC determination.

Finally, Billingslea argues that the ALJ erred by not inquiring as to Billingslea's reasons for her lapse in care in 2020 and by not considering Billingslea's possible insurance issues when finding that Billingslea's exacerbated edema was due, in part, to Billingslea's lapse in care and inconsistency in performing home exercises. (Pl.'s Br. at 14.) Billingslea relies on language from Social Security Ruling 16-3:

> [I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

(*Id.*)

In summarizing the June 10, 2020 treatment report from Aurora Health Care, the ALJ wrote: "Interestingly, the provider, at that time, indicated that exacerbation in edema measures may be due to several factors, including the claimant's lapse in care and inconsistently in HEP performance; with the claimant at that time verbalizing her awareness of the need for increased attendance and consistency in care." (Tr. 20.) This sentence does not say or suggest that Billingslea's allegations of severe symptoms were inconsistent with her failure to seek treatment or her noncompliance with prescribed treatment. Rather, the ALJ was merely describing the treatment report in Billingslea's medical records. *See Ickes v. Kijakazi*, No. 1:20-cv-432-JPK, 2022 U.S. Dist. LEXIS 168473, at *18–19 (N.D. Ind. Sep. 19, 2022). Moreover, the ALJ does not mention Billingslea's lapse in care at any other point in his RFC determination. Because the ALJ's decision did not find that Billingslea's symptom

testimony was inconsistent with her failure to follow prescribed treatment, the ALJ did not have to inquire about why Billingslea failed to follow prescribed treatment.

In sum, because the ALJ cherry picked improvement evidence and did not provide sufficient reasoning to build a logical bridge between the evidence and his findings as to the necessary degree of leg elevation, I find that the ALJ did not adequately account for limitations related to Billingslea's bilateral leg lymphedema in making the RFC determination.

### 2.2 Persuasiveness of Nurse Hafemann's Conclusions

Billingslea asserts that the ALJ failed to rationally articulate grounds for finding Nurse Practitioner Susan Hafemann's opinions partially persuasive and that this constitutes material legal error. (Pl.'s Br. at 17.) Specifically, Billingslea asserts that there is no explanation as to why the ALJ rejects Nurse Hafemann's opinions that Billingslea can only sit for a total of two hours and stand/walk a total of less than two hours in an eight-hour workday, that that the ALJ cites no support for his statement regarding the degree of leg elevation required, and that it is unclear what support the ALJ deems lacking when evidence as to Billingslea's leg edema and the need for leg elevation is consistently documented. (*Id.* at 17–18.)

SSA regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors like familiarity with the other evidence in the claim or an understanding of SSA policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c)(1)–(5). Although an ALJ may consider all five factors, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(a). The supportability factor focuses on what the source brought forth to support its findings: "The more relevant the objective medical evidence and supporting explanations presented by a medical source

are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor compares the source's findings to evidence from other sources: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). An ALJ must explain how they considered the factors of supportability and consistency in their decision, but they are not required to explain how they considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2).

Here, Billingslea maintains the ALJ erred in evaluating the medical opinions of Nurse Hafemann. The ALJ evaluated two assessments provided by Nurse Hafemann from October 2020 and April 2021. (Tr. 21.) In the report dated October 6, 2020, Nurse Hafemann indicated that as a result of a work injury in September 2016, Billingslea experienced "mid to low back pain, left leg arthritis, as well as ankle pain, secondary to progressive degenerative arthritic changes," which have "affected her ability to exercise, bend, and affected her mental health and decreased socialization." (*Id.*) Nurse Hafemann opined that Billingslea "is unable to sit or stand more than 2 consecutive hours without increase pain and decreased mobility; and she is unable to lift over 10 pounds." (*Id.*) Nurse Hafemann also provided a musculoskeletal impairment medical assessment dated April 8, 2021, in which she indicated that Billingslea "is able to sit and stand no more than 1 hour at a time[;] . . . that she must walk around/stand for 20 minutes before returning to sitting"; that she "would require unscheduled breaks during the workday due to pain; and that she would elevate her legs at least two hours during an eight hour workday due to edema and pain." (*Id.*)

Ultimately, the ALJ determined that Hafemann's opinions were only partially persuasive because her reports had a "lack of specificity with regard to the claimant's

13

functional abilities" and contained "some internal inconsistencies." (*Id.*) Furthermore, the ALJ found that "the limitations assigned for absenteeism are speculative and not supported by other evidence in the record . . . and there is little support in the record for elevating the legs to the extent opined by Provider Hafemann." (*Id.* at 21–22.)

The ALJ discounted Nurse Hafemann's opinions because her findings were not consistent with the record as a whole, specifically noting that clinical reports suggested significant improvements with treatment (Tr. 20), that Billingslea reported engaging in a somewhat normal level of daily activity and interaction despite her impairments (Tr. 22), and that the State agency medical consultant Marc Young, M.D. limited the claimant to light work with no additional postural limitations (Tr. 23). Although "[m]edical opinions may be discounted if they are inconsistent with the record as a whole," for the same reasons I find the ALJ erred in his assessment of Billingslea's lymphedema as discussed above, I find that the ALJ failed to fully evaluate the record evidence in rejecting Nurse Hafemann's opinion regarding Billingslea's need to elevate her legs. Again, in discounting her need to elevate her legs, the ALJ relied on incomplete and cherry-picked records showing improvements in her leg swelling and failed to consider her limitations in performing her activities of daily living, which I will further discuss further *supra*. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021); 20 C.F.R. §§ 404.1520c(c)(2). As such, the ALJ's analysis in weighing Nurse Hafemann's opinion regarding Billingslea's need to elevate her legs is flawed, and remand is warranted on this ground.

### 2.3 Consistency of Billingslea's Statements with the Record

Billingslea asserts that the ALJ's determination that Billingslea's statements are not consistent with the record is not supported by substantial evidence. (Pl.'s Br. 19.) Specifically, Billingslea asserts that "[t]o support his conclusion concerning the supportability of

Billingslea's statements, the ALJ cites to reasons related to leg elevation whose insufficiency have already been discussed, supra." (*Id.* at 20.) Billingslea also asserts that the ALJ's discussion of her symptoms violated SSR 16-3p because he ignored the limitations that Billingslea requires in order to perform what he deems a "normal level of daily activity and interaction." (Pl.'s Br. 20.) While Billingslea states that she can perform certain activities like stretching, making simple meals, taking walks, doing light cleaning, laundry, driving, grocery shopping, getting together with friends, and going to movies, she also states that she requires accommodations to perform those activities such as elevating her legs, icing her back, using motorized carts in stores, breaking up tasks throughout the day, and napping 1–2 hours per day. (*Id.*) Further, she asserts that the ALJ ignoring limitations that detract from his conclusions constitutes material error. (*Id.*)

"In evaluating a claimant's subjective symptom allegations, an ALJ assesses the objective medical evidence and several other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate pain." *Angie S. v. Kijakazi*, No. 21 C 5978, 2022 U.S. Dist. LEXIS 210429, at *22 (N.D. Ill. Nov. 21, 2022) (citing SSR 116-3p). "Although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). On that basis, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.*; *see also Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th

Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003).

Here, the ALJ found that "despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction." (Tr. 22.) The ALJ noted that Billingslea testified that she "continues to manage the range of activities of daily living she reported in [her Function Report] in July 2020, including stretching, making simple meals, taking walks, performing light cleaning, laundry, driving, and grocery shopping" and that "she continues to also care for her dad, doing errands and other daily things for him." (*Id.*) Ultimately, the ALJ determined that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment" and that "the abilities the claimant described are consistent with sedentary work." (*Id.*)

Because an ALJ is supposed to consider a claimant's limitations in performing household activities, the ALJ erred in failing to acknowledge record evidence indicating that Billingslea can only perform these activities with limitations, such as leg elevation (Tr. 235–37), using a motorized scooter when grocery shopping (*id.* at 899), or making quick, microwavable meals (*id.* at 207). *See Kittelson v. Astrue*, 362 F. App'x 553, 557-58 (7th Cir. 2010) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). For this reason, the ALJ erred in finding Billingslea's statements regarding her daily activities inconsistent with the record evidence.

## CONCLUSION

Billingslea asserts three errors with the ALJ's decision in this case. I find that the ALJ erred by failing to adequately account for the limitations caused by Billingslea's lymphedema in his RFC determination and by failing to support his decisions to discount both Nurse

16

Hafemann's opinions and Billingslea's statements due to lack of consistency with the overall record with substantial evidence.

Billingslea asks for reversal and an award of benefits, but that remedy is appropriate only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports but one conclusion—that the claimant qualifies for disability benefits. *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). As discussed above, there are unresolved issues the ALJ must sort out on remand. For these reasons, the Commissioner's decision is reversed, and the case will be remanded for further proceedings consistent with this decision.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of April, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge